THOMPSON, Presiding Judge.
Darren Randall Cook (“the father”) appeals from a judgment of the Geneva Circuit Court (“the trial court”) denying his petition to modify his child-support obligation and reinstating his obligation to pay the child support, which had been stayed by an order of the trial court effective November 1, 2014.
The father filed a petition seeking a reduction of his child-support obligation on November 1, 2013. The record in this modification action indicates the following. The father and Sheryl Lindenmuth Cook Sizemore (“the mother”) were divorced by a judgment of the trial court entered on July 18, 2001. The parties’ only child was three years old at that time. In the divorce judgment, which incorporated an agreement of the parties, the father was ordered to pay $923 a month in child support. The judgment explicitly stated that the child-support award had been determined pursuant to the guidelines set forth in Rule 32, Ala. R. Jud. Admin. At the time of the parties’ divorce, the father’s gross monthly income was $5,833; the mother’s gross monthly income was $1,213.
When the divorce judgment was entered, the father was employed as the manager for Ready Mix Concrete Company (“RMC”), earning an annual income of approximately $73,000. At the hearing on his petition to modify, the father testified that RMC went out of business and that, thereafter, he began his own trucking business hauling cement for companies. After Hurricane Katrina struck the gulf coast in 2005, however, the trucking business declined, the father said. He testified that he was able to prevent his business from having to declare bankruptcy. The father said that he sold his trucking equipment to another man and then went to work for that man earning $50,000 annually. The father testified that he worked for that business for about .three years; however, the father said, that business had financial trouble and, eventually, ■ he lost that job. The father testified that that occurred approximately seven years before the modification hearing, which would . have been 2008.
*956 The father testified that he had managed up to 40 or 50 people in the concrete business. He also said that he had managed heavy equipment and had been required to do tasks like allocate fuel and other tasks. The father testified that, after he was laid off he “made a few phone calls” to people in the cement-trucking industry in an attempt to obtain a new job. He said that there were not many businesses engaged in the industry and that it did not take him long to exhaust the job possibilities. Because of the economy, the father said, those businesses were not hiring and he was unable to find employment. By that time, the father had remarried, and, he said, his wife and his mother financially supported him for a time.
At the September 28, 2015, modification hearing, the father testified that he was managing a liquor store in Mississippi, where he lived with his wife and them child. The liquor store is owned by a limited-liability company (“the LLC”) of which the father’s wife is the sole member. The father explained that the LLC had borrowed $300,000 from his mother, but, he said, he did not have an ownership interest in the liquor store.
The father testified that he began managing the liquor store before it opened in December 2012. At the time of the hearing, the father supervised the four other employees of the liquor store. Under cross-examination, 'the father acknowledged that, pursuant to Mississippi law, he cannot be a management employee because of his unspecified “tax problems.” Therefore, instead of being a manager, the father said, he was a “retail salesperson supervisor.” The father testified that, as the supervisor, he works 60 to 70 hours each week and that his wages from the liquor store were $21,915 in 2013. He stated that his income from the store had not fluctuated since that time. A pay stub the father had produced during discovery that was discussed during the hearing indicated that the father earned $480.77 each week. The father said that he was paid 52 weeks a year, which would give him an annual income of $25,000.04.[1]
The father, who holds a “four-year college degree” in law enforcement, said that he did not have an income from any other source. He testified that, other than the cement-trucking industry, he did not believe that, in his geographic area, he could find a job earning more money than he did at the liquor store. The father testified that he had no other assets from which to pay child support. He testified that his wife owned the house they lived in and that he was not named on the promissory note for the house, although he was named on the mortgage. The father acknowledged that he had never filed an application with the Mississippi Office of Unemployment or submitted resumes to any person or company. He also stated that, since filing his modification petition, he had not looked for any other employment. In response to a question regarding whether he had looked for any other job, the father replied, “I’m employed. No. I like what I do.”
The parties’ child, who was 17 years old at the time of the modification hearing, testified that he was in his senior year of high school. He said that he was involved in extracurricular activities such as marching band and various clubs that required *957 certain fees and costs for him to participate. He also testified regarding other expenses he has incurred, such as needing money to attend his proms. The child and the mother both testified that the trial court’s allowing the father to stop paying child support during the course of the litigation had created a financial hardship for them.
On October 6, 2015, the trial court entered a judgment denying the father’s petition to modify child support and reinstating, retroactive to November 1, 2014, the father’s obligation to pay child support, which, as mentioned, had been subject to a court-ordered stay during the pendency of this action. The trial court’s judgment contains no findings of fact. The father filed a motion to alter, amend, or vacate the judgment. After a hearing, the trial court denied the father’s motion in an order dated November 9, 2015. The father then filed a timely notice of appeal.
The father contends that he presented evidence indicating that, since the entry of the 2001 divorce judgment, his gross monthly income has been reduced by approximately $4,000. He maintains that such a reduction in income constitutes a material change in circumstances warranting a reduction in his child-support obligation, pursuant to the Rule 32, Ala. R. Jud. Admin., child-support guidelines. The father also argues that the undisputed evidence regarding the reduction in his annual income would result in a more than 10% variation in the amount of child support he would owe under the child-support guidelines; thus, under Rule 32(A)(3)(c), he says, there is a rebuttable presumption that his child-support obligation should be modified. We agree with the father that he presented evidence indicating that he has had a significant decrease in his annual income since the divorce judgment was entered in July 2001. Such an appreciable change in income—from approximately $73,000 annually to approximately $25,000 annually—has been held to be a material change in circumstances for purposes of modifying child support. Kwasigroh v. Kwasigroh, 209 So.3d 520 (Ala.Civ.App. 2016); H.J.T. v. State ex rel. M.S.M., 34 So.3d 1276, 1280 (Ala.Civ.App.2009). “However, the fact that a change in circumstances has occurred does not necessarily end the inquiry and require that the father’s child-support obligation be modified.” H.J.T., 34 So.3d at 1280.
Rule 32(A)(3)(e), Ala. R. Jud. Admin., provides, in pertinent part, that “a trial court has discretion to deny a modification even when the ten percent (10%) variation is present, based on a finding that the application of the guidelines in that case would be manifestly unjust' or inequitable.” Furthermore, if the trial court concludes from the evidence presented that a deviation from the child-support guidelines is warranted, it must enter a written finding stating the reasons for its determination “that application of the guidelines would be manifestly unjust or inequitable.” Rule 32(A)(ii). Therefore, although the father demonstrated that his income had decreased by more than 10% and had demonstrated a corresponding more-than-10% deviation in his child-support obligation under the guidelines, since the trial court initially established his child-support obligation, the trial court was not required to modify the amount of child support the father was obligated to pay. However, because the trial court’s decision not to modify child support constituted a deviation from the guidelines, it was required to make a written finding stating the reasons it had determined “that application of the guidelines would be manifestly unjust or inequitable.” Rule 32(A)(ii).
In response to the father’s argument, the mother contends, as she did at *958 the trial of this action, that the evidence indicates that the father was voluntarily underemployed, which is a factor the trial court can consider when determining whether to modify a parent’s child-support obligation. See, e.g., Kwasigroh, supra; Bittinger v. Byrom, 65 So.3d 927, 933-34 (Ala.Civ.App.2010) (holding that, in a child-support-modifieation case, trial court is afforded discretion to impute income to parent on a determination that the parent is voluntarily underemployed).
“The trial court is afforded the discretion to impute income to a parent for the purpose of determining child support, and the determination that a parent is voluntarily unemployed or underemployed ‘is to be made from the facts presented according to the judicial discretion of the trial court.’ Winfrey v. Winfrey, 602 So.2d 904, 905 (Ala.Civ.App.1992). See also Rule 32(B)(5), Ala. R. Jud. Admin.”
Clements v. Clements, 990 So.2d 383, 394 (Ala.Civ.App.2007).
This court has never required a written finding that a parent is voluntarily unemployed or underemployed. See G.B. v. J.H., 915 So.2d 570, 574 (Ala.Civ.App.2005).
“A trial court may validly impute in-, come to a parent pursuant to Rule 32(B)(5) without expressly finding that the parent is voluntarily unemployed or underemployed. In Berryhill v. Reeves, 705 So.2d 505, 507 (Ala.Civ.App.1997), the trial court imputed income to the father without expressly finding that he was voluntarily unemployed or underemployed. This court stated:
“‘Under Rule 32(B)(5), Ala. R. Jud. Admin., a trial court must impute income to a parent and calculate his or her child support obligation based upon that parent’s potential income if “the court finds that [the] parent is voluntarily unemployed or underemployed.” While the trial court’s judgment sets forth no express findings of fact concerning this issue, it is well settled that where the trial court does not make specific factual findings, this court mil assume that the trial court made such findings as would support its judgment. Transamerica Com. Fin. Corp. v. AmSouth Bank, N.A., 608 So.2d 375, 378 (Ala.1992).’
“(Emphasis added.)”
G.B., 915 So.2d at 574. “This court, noting that the language of Rule 32 is mandatory, has held that where a trial court finds a parent to be voluntarily unemployed or underemployed, it is required to impute income to that parent. T.L.D. v. C.G., 849 So.2d 200, 206 (Ala.Civ.App.2002).” Van Houten v. Van Houten, 895 So.2d 982, 986 (Ala.Civ.App.2004).
The competing presumptions in this case place this court in a difficult position. If the trial court imputed income to the father, it was not required to have expressly stated that it was doing so. Instead, following established caselaw, this court would be required to presume that the trial court made the necessary findings to support its decision to impute income to the father, if such findings were supported by the record. However, the trial court also could have denied the father’s petition to modify child support based upon a determination that a deviation from the guidelines was warranted under the facts of this case. In that case, the trial court would have been required to make written findings regarding its decision that “application of the guidelines would be manifestly unjust or inequitable.” Rule 32(A)(ii).
The trial court’s judgment as written provides us with no guidance as to whether it imputed as income to the father the amount of his former income, which would result in the same amount of child support as had been established in the *959 divorce judgment, or whether the trial court determined that, because of certain facts or circumstances included in the record, the application of the guidelines would be manifestly unjust or inequitable in this case. Therefore, we cannot determine whether the trial court erred by failing to make a written finding setting forth its reasons for deviating from the Rule 32 child-support guidelines or whether we should examine the evidence to see if it could support a conclusion that the father was voluntarily underemployed and that his former income should be imputed to him. Accordingly, we reverse the judgment and remand the cause to the trial court for it to enter a judgment making clear whether it intended to impute income to the father or whether it believed the evidence presented warranted a deviation from the child-support guidelines, in which case it must make the written findings required by Rule 32(A)(ii) and Rule 32(A)(3)(e), Ala. R. Jud. Admin.
REVERSED AND REMANDED.
PITTMAN, THOMAS, and DONALDSON, JJ., concur.
MOORE, J., concurs in the result, without writing.

. The record indicates that the mother’s attorney spent a lot of time attempting to elicit testimony regarding the earnings of the liquor store each year. Much of that testimony was objected to, and the trial court sustained many of those objections. As discussed later in this opinion, we are able to reach a resolution of this case without parsing the books of the liquor store, or even determining the relevance of such evidence. Therefore, we omit a discussion of the evidence pertaining to that matter.