THOMPSON, Presiding Judge.
This is the second time Darren Randall Cook (“the father”) and Shéryl Linden-muth Cook Sizemore (“the mother”) have been before this court in this case." The father is seeking a reduction' in his child-support obligation based on what he says is. a significant decrease in his income. The first time the parties were before this court, the father was appealing from the trial court’s judgment denying his petition to modify child support. Cook v. Sizemore, 212 So.3d 954, 955 (Ala. Civ. App. 2016). The trial court had previously stayed the father’s child-support obligation, but in its final judgment, entered on October 6, 2015, the trial court reinstated that obligation retroactive to November 1, 2014. Id. at 957.
■ In Cook, we agreed with the father that he had had an appreciable decrease in his income since his child-support obligation had originally been established such that there had been a material change in circumstances. Id. at 957. Nonetheless, we determined, the trial court had the discretion to deny the father’s request for a modification if it had found that application of the child-support guidelines “would be manifestly unjust or inequitable” or if it had imputed income to the father. Id. at 957; After reviewing the record and examining the applicable caselaw, we concluded:
“If the trial court imputed income to the father, it was not required to have expressly stated that it was doing so. Instead, following established caselaw, this court would be required to presume that the trial court made the necessary findings to support its decision to impute income to the father,-if such findings were supported by the record. However, the trial court also could have denied the . father’s petition to modify child support based upon a determination that a deviation from the guidelines was warranted under the facts of this- case. In that case, the trial court would have been required to make written findings regarding its decision that ‘application of the guidelines would be manifestly unjust or,inequitable.’ Rule 32(A)(ii)[, Ala. R. Jud. Admin.].
“The trial court’s judgment as written provides us with no . guidance as to whether it imputed as income to the father the amount of his former income, which would result in the same amount ■of child support as had been established in the divorce judgment, or whether the trial court determined that, because of certain facts or circumstances included in the record, the application of the guidelines would be manifestly unjust or inequitable in this case. Therefore, we *1228 cannot determine whether the trial court erred by failing to make a written finding setting forth its reasons for deviating from the Rule 32 child-support guidelines or whether we should examine the evidence to see if it could support a conclusion that the father was voluntarily underemployed and that his former income should be imputed to him. Accordingly, we reverse the judgment and remand the cause to the trial court for it to enter a judgment making clear whether it intended to impute income to the father or whether it believed the evidence presented warranted a deviation from the child-support guidelines, in which case it must make the written findings required by Rule 32(A)(ii) and Rule 32(A)(3)(e), Ala. R. Jud. Admin.”
Cook, 212 So.3d at 958-59.
On remand, the trial court entered a judgment dated July 5, 2016, stating: “This Court finds that Father is voluntarily underemployed and hereby imputes income to the Father at the amount of his former employment. Accordingly, the Father’s Petition for Modification of Child Support is hereby denied.” The trial court again reinstated the father’s previous child-support obligation retroactive to November 1, 2014. The father appealed from the July 5, 2016, judgment.
In Cook, we set forth the following relevant facts:
“The record in this modification action indicates the following. The father and - [the mother] were divorced by a judgment of the trial court entered on July 18, 2001. The parties’ only child was three years old at that time. In the divorce judgment, which incorporated an agreement of the parties, the father was ordered to pay $923 a month in child support. The judgment explicitly stated that the child-support award had been determined pursuant to the guidelines set forth in Rule 32, Ala. R. Jud. Admin. At the time of the parties’ divorce, the father’s gross monthly income was $5,833; the mother’s gross monthly income was $1,213.
“When the divorce judgment was entered, the father was employed as the manager for Ready Mix Concrete Company (‘RMC’), earning an annual income of approximately $73,000. At the hearing on his petition to modify, the father testified that RMC went out of business and that, thereafter, he began his own trucking business hauling cement for companies. After Hurricane Katrina struck the gulf coast in 2005, however, the trucking business declined, the father said. He testified that he was able to prevent his business from having to declare bankruptcy. The father said that he sold his trucking equipment to another man and then went to work for that man earning $50,000 annually. The father testified that he worked for that business for about three years; however, the father said, that business had financial trouble and, eventually, he lost that job. The father testified that that occurred approximately seven years before the modification hearing, which would have been 2008.
“The father testified that he had managed up to 40 or 50 people in the concrete business. He also said that he had managed heavy equipment and had been required to do tasks like allocate fuel and other tasks. The father testified that, after he was laid off he ‘made a few phone calls’ to people in -the cement-trucking industry in an attempt to obtain a new job. He said that there were not many businesses engaged in the industry and that it did not take him long to exhaust the job possibilities. Because of the economy, the father said, those *1229 businesses were not hiring and he was unable to find employment. By that time, the father had remarried, and, he said, his wife and his mother financially supported him for a time.
“At the September 28, 2015, modification hearing, the father testified that he was managing a liquor store in Mississippi, where he lived with his wife and their child. The liquor store is owned by a limited-liability company (‘the LLC’) of which the father’s wife is the sole member. The father explained that the LLC had boiTowed $300,000 from his mother, but, he said, he did not have an ownership interest in the liquor store.
“The father testified that he began managing the liquor store before it opened in December 2012. At the time of the hearing, the father supervised the four other employees of the liquor store. Under cross-examination, the father acknowledged that, pursuant to Mississippi law, he cannot be a management employee because of his unspecified ‘tax problems.’ Therefore, instead of being a manager, the father said, he was a ‘retail salesperson supervisor.’ The father testified that, as the supervisor, he works 60 to 70 hours each week and that his wages from the liquor store were $21,915 in 2013. He stated that his income from the store had not fluctuated since that time. A pay stub the father had produced during discovery that was discussed during the hearing indicated that the father earned $480.77 each week. The father said that he was paid 52 weeks a year, which would give him an annual income of $25,000.04.
“The father, who holds a ‘four-year college degree’ in law enforcement, said that he did not have an income from any other source. He testified that, other than the cement-trucking industry, he did not believe that, in his geographic area, he could find a job earning more money than he did at the liquor store. The father testified that he had no other assets from which to pay child support. He testified that his wife owned the house they lived in and that he was not named on the promissory note for the house, although he was named on the mortgage. The father acknowledged that he had never filed an application with the Mississippi Office of Unemployment or submitted resumes to any person or company. He also stated that, since filing his modification petition, he had not looked for any other employment. In response to a question regarding whether he had looked for any other job, the father replied, ‘I’m employed. No. I like what I do.’
“The parties’ child, who was 17 years old at the time of the modification hearing, testified that he was in his senior year of high school. He said that he was involved in extracurricular activities such as marching band and various clubs that required certain fees and costs for him to participate. He also testified regarding other expenses he has incurred, such as needing money to attend his proms. The child and the mother both testified that the trial court’s allowing the father to stop paying child support during the course of the litigation had created a financial hardship for them.
“On October 6, 2015, the trial court entered a judgment denying the father’s petition to modify child support and reinstating, retroactive to November 1, 2014, the father’s obligation to pay child support, which, as mentioned, had been subject to a court-ordered stay during the pendency of this action. The trial court’s judgment contains no findings of fact. The father filed a motion to alter, amend, or vacate the judgment. After a hearing, the trial court denied the father’s motion in an order dated Novem *1230 ber 9, 2015. The father ■ then filed a timely notice- of appeal.”
212- So,3d at 955-57 (footnote omitted).
In the present appeal, the father first argues that the trial court abused its discretion by imputing' income to him because, he says, there was no evidence in the record to support a determination that he was underemployed or of his “alternative'employability and'income-earning ability. ”As we wrote in Cook:
“ ‘The trial court is afforded the discretion to impute income tó a parent for the purpose of determining child support, and the determination that a parent is voluntarily unemployed or underemployed “is té be made from the facts presented according to the- judicial discretion -of the trial court.” Winfrey v. Winfrey, 602 So.2d 904, 905 (Ala. Civ. App. 1992). See also Rule 32(B)(5), Ala. R. Jud. Admin.’
“Clements v. Clements, 990 So.2d 383, 394 (Ala. Civ. App. 2007);”
212 So.3d at 958.
We also wrote in Cook:
“ “‘Under' Rule 32(B)(5), Ala. R. Jud. Admin., a trial court must impute income to a parent and calculate his or her child support obligation based upon' that parent’s potential income if ‘the court finds that [the] parent is- voluntarily unemployed or ■ underemployed.’ ■While the trial court’s judgment sets forth no -express findings of fact concerning this issue, it is well settled that where the trial court does, not make specific factual findings, this court will assume that the trial court 'made such findings as would support its judgment. Transamerica Com. Fin. Corp. v. AmSouth Bank, N.A., 608 So.2d 375, 378 (Ala. 1992).”
“ ‘(Emphasis added.)’
“G.B. [v. J.H.], 915 So.2d [570] at 574 [ (Ala. Civ. App. 2005) ]. ‘This court, noting that the language of Rule 32 is mandatory, has held that where a trial court finds a parent to be voluntarily unemployed or underemployed, it is required to impute income to that parent. T.L.D. v. C.G., 849 So.2d 200, 206 (Ala. Civ. App. 2002),’ Van Houten v. Van Houten, 895. So.2d 982, 986 (Ala. Civ. App. 2004).”
212 So.3d at 958.
Rule 32(B)(5), Ala. R. Jud. Admin., sets forth factors' a trial court should consider when determining whether a parent is unemployed or underemployed:
“In determining the amount of income to be imputed to a parent who is unemployed or underemployed, the court should determine the employment potential and probable earning level of that parent, based on that parent’s recent work history, education, and occupational qualifications, and on the prevailing job opportunities and earning levels in .the community;”
In this case, the reeord indicates that the father had owned his own trucking business that had hauled concrete for companies. According to the father’s own testimony, he had experience managing up to-40 or 50 people, had overseen heavy equipment, and had made decisions relevant to the allocation of resources. The father was able to use the skills he learned in the cement-trucking industry to manage a liquor store. He also had a four-year college degree in law enforcement. The father also admitted that he had not filed an application with the Mississippi Office of Unemployment or submitted resumes to any person or business. From that evidence, the trial court could have reasonably concluded that the father’s work experience and skills were transferable to positions outside of the cement-trucking *1231 industry. The trial court also could have determined that the father’s attempts to find employment in which he could earn an income on a par with his previous income of between $50,000 and $73,000 by making only “a few phone calls” to people only within the cement-trucking industry was wholly inadequate.
“ ‘ “It is ... well established that in the absence of specific findings of fact, appellate courts will assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous.” ’
“Ex parte H.H., 830 So.2d 21, 25 (Ala. 2002) (quoting Ex parte Bryowsky, 676 So.2d 1322, 1324 (Ala. 1996)). Furthermore, an appellate court may not substitute its judgment for that of the trial court. [Ex parte] Durbin, 818 So.2d [404] at 409 [ (Ala. 2001) ]. To do so would be to reweigh the evidence, which Alabama law does not allow. Ex parte H.H., 830 So.2d at 25-26.”
Ex parte Foley, 864 So.2d 1094, 1099 (Ala. 2003). Based on our standard of review and the record before us, we conclude that the trial court did not abuse its discretion in determining that the father was voluntarily underemployed.
The father also argues that the trial court failed to apply the child-support guidelines set forth in Rule 32, Ala. R. Jud. Admin., in determining the amount of his child-support obligation. The mother agrees with the father that the amount of child support he was ordered to pay does not comply with the guidelines and that ■the cause must be remanded for the trial court to recalculate child support.
In the judgment on remand, the trial court “impute[d] income- to the Father at the-amount of his former employment.” The judgment did not set forth the specific amount the father was to pay, it did not indicate- which “former employment” was intended to serve as- the basis of the imputed income, and the record does not contain .a . “Child-Support Guidelines” Form CS-42 demonstrating, how child support was calculated. . ;
The father’s child-support obligation at the time he. filed his. modification petition was $923 a month. In her brief on appeal, the mother points out that, at the time the original divorce judgment was entered, the father’s monthly income was $5,833. She states that she “had income of $3,274 with [a] health-insurance payment of $37.33.”[1] Based on those figures, the mother calculated that, pursuant to the child-support guidelines, the father’s child-support payment should be $670.29, some $252.71 less than the amount he was paying at the time he filed his petition to modify.
Furthermore, we note that the company the father worked for at the time the 2001 divorce judgment was entered went out of business, and there is no evidence in the record to indicate that he earned an equivalent annual income since that time. The record shows that the father earned approximately $50,000 in his last job in the cement-trucking industry;
As mentioned, once the trial court determined that the father was underemployed, it was required to impute income to the father. Van Houten v. Van Houten, 895 So.2d 982, 986 (Ala. Civ. App. 2004); Rule 32(B)(5). In this case, even .with the trial court’s statement in the judgment that it was imputing income to the father “at the amount of his former employment,” we *1232 cannot determine the amount of income the trial court intended to impute to the father or the specific amount of his child-support obligation. Accordingly, we have no choice but to reverse the judgment and to remand this cause once again for the trial court to determine the specific amount of income to be imputed to the father, to determine the mother’s current income, and to calculate the father’s child-support obligation using Form CS-42, pursuant to Rule 32(E), Ala. R. Jud. Admin.
REVERSED AND REMANDED WITH INSTRUCTIONS.
Pittman, Thomas, Moore, and Donaldson, JJ., concur.

. It is not clear whether the figures the'mother set forth in her brief represented her current income. We note that in Cook, supra, we wrote that the record indicated that at the time of the parties’ divorce in 2001, the mother’s gross monthly income was $1,213.